STATE OF NEBRASKA, APPELLEE, V.
JAMES M. WINKLER, APPELLANT.

663 N.W.2d 102

Filed June 20, 2003.   No. S-02-177.

David A. Domina and Audrea Y. Kappert, of Domina Law, P.C., for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

James M. Winkler appeals from an order of the district court for Holt County denying his plea in bar. Winkler argues that a successive prosecution for making terroristic threats under Neb. Rev. Stat. § 28-311.01(1)(a) (Reissue 1995) is barred by principles of double jeopardy after he pled guilty to third degree assault under Neb. Rev. Stat. § 28-310(1)(a) (Reissue 1995).

## FACTS

On August 29, 2001, Winkler was charged by amended complaint in the county court for Holt County with assault in the

third degree, a Class I misdemeanor, and criminal mischief, a Class II misdemeanor. The amended complaint alleged that on or about December 24, 2000, Winkler "intentionally or knowingly or recklessly cause[ed] bodily injury to Matthew Drueke" and "intentionally damage[ed] property of another causing pecuniary loss in excess of $100.00, to-wit: two tires and a window of a Ford pickup belonging to Martin Drueke." The assault charge was pursuant to § 28-310(1)(a). Winkler subsequently entered pleas of no contest to both counts. In providing the factual basis for the pleas, the State asserted:

By way of a factual basis, I would tell the Court that if called to the witness stand, the victim, Matthew Drueke, of count one, and the witnesses, Sarah McCabe and Travis Sanderson, if called to the witness stand, under oath would all testify that they were present on or about December 24, 2000, in Holt County, Nebraska, when the defendant, whom all three witnesses could identify personally, took the butt of a shotgun and thrust the butt of the shotgun through a closed pickup window — the — the driver's side of a pickup window, and that Matthew Drueke was sitting behind the wheel of that pickup and the defendant was shouting and was angry at Mr. Drueke, and that the defendant took that gun and with — with the butt of the gun, struck the window — the driver's side door window of the pickup and thrust it right on through and hit Matthew Drueke in the face, which blacked his eye and caused Mr. Drueke pain. And with regard to count two, all of those witnesses would testify that at the same time and place that the same defendant shot out the two tire — two tires of that same Ford pickup, as those witnesses all sat in the cab of the pickup, and broke the window of that Ford pickup as earlier described with the butt of that shotgun.

After determining that the pleas were entered knowingly and voluntarily, the court accepted the no contest pleas and found Winkler guilty on both counts.

Winkler was also charged in a separate amended complaint filed in the county court for Holt County on August 29, 2001, with making terroristic threats in violation of § 28-311.01(1)(a), a Class IV felony. The complaint alleged that on or about

December 24, 2000, Winkler "threaten[ed] to commit a crime of violence with the intent to terrorize another." Winkler waived his right to a preliminary hearing, and the case was bound over to the district court for Holt County. An information charging an identical violation of § 28-311.01(1)(a) was filed in the district court on November 27, 2001. On December 17, Winkler filed a plea in bar in the district court, alleging that prosecution was barred by the principles of double jeopardy because he had previously been convicted of the same offense in county court.

An evidentiary hearing on the plea in bar was held on January 7, 2002. At the hearing, Winkler offered as exhibits the bill of exceptions from the proceedings before the county court, the transcript of the county court proceedings, the legislative history of § 28-311.01, and the affidavit of Winkler's father. The exhibits were received without objection. Upon inquiry of the court, the State noted that the "another" referred to in the information was "Matthew Drueke and/or Travis Sanderson and/or Sarah McCabe and/or Cody Schaaf."

In an order filed February 4, 2002, the district court denied Winkler's plea in bar, reasoning that §§ 28-310 and 28-311.01 each required proof of a fact that the other did not and therefore were not the same offense. Winkler filed this timely appeal.

## ASSIGNMENT OF ERROR

Winkler assigns, restated and summarized, that the district court erred in denying his plea in bar.

## STANDARD OF REVIEW

A denial of a plea in bar involves a question of law. *State v. Isham*, 261 Neb. 690, 625 N.W.2d 511 (2001); *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002); *State v. Haltom*, 263 Neb. 767, 642 N.W.2d 807 (2002).

## ANALYSIS

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects against three distinct abuses: (1) a

second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution. *State v. Nelson*, 262 Neb. 896, 636 N.W.2d 620 (2001); *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000). In this action, Winkler contends that the second prosecution for making terroristic threats is barred by his conviction for third degree assault because both involve the same offense.

In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the U.S. Supreme Court defined the test to be used in determining whether two statutes penalize the same offense. The Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one is whether each provision requires proof of a fact which the other does not. In *United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), the Court stressed that the *Blockburger* test applies equally to multiple punishment and multiple prosecution cases. We have adopted and applied the *Blockburger* test. See, e.g., *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997).

Relying on *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998), Winkler argues that the *Blockburger* test is not applicable to this case. In *White*, we addressed whether an implied acquittal for first degree premeditated murder barred a subsequent prosecution for first degree felony murder. The State contended that the two were not the same offense under the *Blockburger* test because each contained an element not contained in the other. We found, however, that premeditated murder and felony murder are not separate and independent offenses in the Nebraska statutes, but, rather, alternate ways in which criminal liability for first degree murder may be charged and prosecuted under a single statute, Neb. Rev. Stat. § 28-303 (Reissue 1995). We noted that "[i]n determining whether successive prosecutions violate the Double Jeopardy Clause when there has been a single violation of a single statute, the U.S. Supreme Court has expressly declined to

apply the *Blockburger* test." *White,* 254 Neb. at 572, 577 N.W.2d at 745, citing *Sanabria v. United States,* 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978). We therefore concluded that the *Blockburger* test was an inappropriate tool for analyzing whether a subsequent prosecution under an alternative theory of criminal liability derived from the same statute as the prior prosecution was barred by the Double Jeopardy Clause.

Here, Winkler was not successively prosecuted under two alternate theories of committing the same crime, but, rather, under two statutes defining distinct offenses which are separately codified in the Nebraska Criminal Code. The mere fact that each charge arose out of the same conduct does not support Winkler's argument that he is being successively prosecuted for the same crime committed by alternate means. In fact, the "same-conduct" theory advanced by Winkler has been directly rejected by the U.S. Supreme Court. See *United States v. Dixon, supra* (overruling "same-conduct" test of *Grady v. Corbin,* 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990)). Because this case involves successive prosecution under two distinct statutes, the *Blockburger* test is applicable.

The *Blockburger,* or "same elements," test asks whether each offense contains an element not contained in the other. *State v. Stubblefield,* 249 Neb. 436, 543 N.W.2d 743 (1996), citing *United States v. Dixon, supra.* If not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. *Id.* If so, they are not the same offense and double jeopardy is not a bar to additional punishment or successive prosecution. *Id.* Under Nebraska's penal code, both third degree assault and terroristic threats are crimes that may be committed in alternate ways. Section 28-310(1) provides: "A person commits the offense of assault in the third degree if he: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) Threatens another in a menacing manner." Thus, one can commit third degree assault by engaging in the conduct described in either § 28-310(1)(a) or (b). Similarly, § 28-311.01(1) provides:

A person commits terroristic threats if he or she threatens to commit any crime of violence:

(a) With the intent to terrorize another;

(b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or

(c) In reckless disregard of the risk of causing such terror or evacuation.

One can commit a terroristic threat by engaging in the conduct described in § 28-311.01(1)(a), (b), or (c). Because each of these statutes permits the State to charge the offense in alternative ways, we must first determine which elements of third degree assault must be compared to which elements of terroristic threats in applying the *Blockburger* test to determine whether the two offenses are separate or the same.

The U.S. Supreme Court provided some guidance on this issue in *Whalen v. United States*, 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). In that case, the defendant was convicted under the applicable District of Columbia code of the separate statutory offenses of rape and killing in the perpetration of the rape, both offenses involving the same victim. He was sentenced to consecutive terms of incarceration on each offense. Applying the *Blockburger* test, the Court held that the multiple punishments were prohibited by the Double Jeopardy Clause. In so holding, the Court rejected the Government's argument that felony murder and rape were not the same offense because felony murder could result from a killing in the perpetration of predicate offenses other than rape, including robbery, kidnapping, or arson. The Court reasoned that because rape was a necessary element in the felony murder charged in the case at issue, the *Blockburger* test should focus only on the elements of rape and felony murder predicated upon rape. The Court acknowledged, however, that the result would be different if it were applying the *Blockburger* test to rape and felony murder based upon a predicate offense other than rape.

In another case decided shortly after *Whalen*, the Court considered whether a motorist who had been convicted of failing to reduce speed to avoid a collision could subsequently be prosecuted for involuntary manslaughter arising from the same fatal accident. *Illinois v. Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). In addressing the issue of whether the two charges constituted the "same offense" for double jeopardy purposes, the Court utilized the *Blockburger* test. It concluded that if,

162

under the applicable Illinois statutes, "a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy." *Vitale*, 447 U.S. at 419-20. However, the Court noted that the record was unclear whether the State was required to or intended to rely on the failure-to-slow charge as the predicate offense for the manslaughter prosecution and stated that "if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test." *Id.* at 419. Because resolution of this uncertainty was determinative of the outcome, the Court remanded the cause for further proceedings consistent with its opinion.

Courts have construed *Whalen* and *Vitale* as further defining the *Blockburger* test when comparing the elements of criminal statutes which can be violated in alternative ways. The Sixth Circuit Court of Appeals articulated the effect of *Whalen* and *Vitale* on the mechanics of the *Blockburger* test as follows:

> Courts have always looked to the *law* the indictment claims the defendant violated. If they did not do so, they would not know even what statutes are at issue under the *Blockburger* rule. What the reviewing court must do now in applying *Blockburger* is go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail.

*Pandelli v. United States*, 635 F.2d 533, 538 (6th Cir. 1980). The court concluded that in the case of criminal statutes which are "multi-purposed and written with many alternatives," it "makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand." *Id.* at 538-39. Other federal and state courts have reached similar conclusions. See, *Davis v. Herring*, 800 F.2d 513 (5th Cir. 1986); *U.S. v. Kuhn*, 165 F. Supp. 2d 639 (E.D. Mich. 2001); *Dixon v. State*, 364 Md. 209, 772 A.2d 283 (2001); *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991); *State v. DeLuca*, 108 N.J. 98, 527 A.2d 1355 (1987). We conclude that this is a logical and fair approach to

application of the *Blockburger* test. Thus, we hold that in applying *Blockburger* to separately codified criminal statutes which may be violated in alternative ways, only the elements charged in the case at hand should be compared in determining whether the offenses under consideration are separate or the same for purposes of double jeopardy.

Applying that principle to this case, we compare the elements of third degree assault as defined by § 28-310(1)(a), of which Winkler was convicted, and terroristic threats as defined by § 28-311.01(1)(a), with which he was subsequently charged. Third degree assault as defined by § 28-310(1)(a) requires proof that the defendant intentionally, knowingly, or recklessly caused bodily injury to another. Causing bodily injury is not an element of making terroristic threats under § 28-311.01(1)(a). Conversely, the offense of making terroristic threats under § 28-311.01(1)(a) requires proof of a threat to commit a crime of violence with intent to terrorize another. The making of a threat with intent to terrorize is not an element of third degree assault under § 28-310(1)(a). Because each of the charged offenses includes at least one element which is not included in the other, they are separate offenses for the purpose of double jeopardy and successive prosecution is therefore not constitutionally prohibited. Accordingly, although our reasoning differs somewhat from that of the district court, we conclude that there was no error in the denial of Winkler's plea in bar.

## CONCLUSION

For the reasons discussed herein, the order of the district court denying Winkler's plea in bar is affirmed and the cause is remanded for further proceedings consistent with this opinion.

AFFIRMED AND REMANDED FOR
FURTHER PROCEEDINGS.